# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY LEE WOODS, | ) |
| Plaintiff, | ) |
| VS. | ) No. 1:18-cv-1032-JDT-cgc |
| OBION COUNTY, ET AL., | ) |
| Defendants. | ) |

### ORDER DISMISSING COMPLAINT,
### CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
### AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On February 12, 2018, Plaintiff Anthony Lee Woods, who at the time of filing was a federal pretrial detainee at the Obion County Jail (Jail) in Union City, Tennessee, filed a *pro se* complaint and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) On March 8, 2018, after Woods fully complied with 28 U.S.C. § 1915(a)(2), (ECF No. 6), the Court issued an order granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 7.) Woods also moved for the appointment of counsel, (ECF No. 8), which the Court denied. (ECF No. 11.) The Clerk shall record the Defendants as Obion County, Tennessee; Captain Darryl Davis; Jennifer Shirley, Medical Officer; and Kelsey Crockett.

Woods alleges that he suffers from heart disease, specifically dilated cardiomyopathy. (ECF No. 1 at PageID 2.) Using the Jail's kiosk system, he requested his medical records from Jackson Madison County General Hospital, but Officer Shirley allegedly told Woods the Hospital

did not have his records and that there was nothing she could do for him. (*Id.*) Woods alleges that Shirley lied to him, and he grieved Shirley's response to Captain Davis, who scheduled Woods an appointment to see a doctor. (*Id.*) Woods's grievances show that Shirley eventually printed a medical release form for Woods to sign so his records would be sent to the Jail. (ECF No. 9 at PageID 33.) Woods claimed in that grievance that he believed he was "the victim of medical negligence." (*Id.*)

At his appointment with the doctor, Woods was prescribed medication, which he eventually stopped taking because it allegedly caused him to "lose consciousness." (ECF No. 1 at PageID 2.) Woods also underwent an EKG and had blood drawn but never heard anything about the results of the tests. (*Id.* at PageID 3.) Since the appointment, Woods alleges he has "been in fear of the Medical treatment" at the Jail. (*Id.*) He states that he has a "deformed chest that is imparted into [his] internal organs" and causes him pain daily, but he has not been prescribed any pain medication. (*Id.*) He alleges that he also needs an MRI "to see the damage that is being done to my internal organs" from his heart condition, which requires reevaluating. (*Id.*) Woods alleges that, without his medical records, he is not receiving proper treatment. (*Id.*) He also alleges in a conclusory manner that "the staff members are attempting to cover this up." (*Id.*)

Woods also contends that he is being debited "medical fees" from his inmate trust account without his knowledge or consent. (*Id.*) Woods told Defendant Crockett that the fees were illegal and demanded to be reimbursed. (*Id.* at PageID 3-4.) Crockett allegedly responded that federal inmates must pay Obion County a medical fee. (*Id.* at PageID 4.) Woods agrees with the premise but only if notice and a consent form have first been given, and he alleges they were not. (*Id.*) Crockett also allegedly refused to give Woods a copy of his inmate trust fund account but said she would send it to the Court if it was requested specifically by the Court itself. (*Id.*) She also

allegedly refused to give Woods copies of his grievance forms. (*Id.*) Woods further alleges Captain Davis told Woods that he "just need[s] to drop this" but does not specify to what Woods believes Captain Davis was referring. (*Id.*)

Woods requests that the Court order Obion County to return the money taken from his inmate trust account, transfer him to another facility, and provide him copies of his grievances and trust fund account information. (*Id.* at PageID 5.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

3

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Woods filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

To the extent Woods seeks to sue individual Defendants in their official-capacities, his claim is against their employer, the Jail. Those claims, in turn, are construed as against Obion County. A local government such as a municipality or county "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis

in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Co. v. Dodson*, 454 U.S. at 326 (citation omitted)). Woods does not allege that he suffered an injury because of an unconstitutional policy or custom of Obion County. His allegations are directed at individuals who work at the Jail. He therefore fails to state a claim against Obion County.

Woods's allegations regarding the medical treatment at the Jail are construed as a claim of deliberate indifference. "The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008)). Like an Eighth Amendment claim, a Fourteenth Amendment claim of deliberate indifference has both an objective and a subjective component. *Id.* To satisfy the objective component, "the detainee must demonstrate the existence of a sufficiently serious medical need." *Id.* (quoting *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)). "For the subjective component, the detainee must demonstrate that

5

the defendant possessed a sufficiently culpable state of mind in denying medical care." *Id.* at 891 (quoting *Spears*, 589 F.3d at 254). A defendant has a sufficiently culpable state of mind if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Woods's primary allegation is that Defendant Shirley lied to him when she told him Jackson Madison County General Hospital did not have his medical records, though she later had him sign a medical release form to obtain the records. Without his medical records, Woods alleges, his care has been inadequate to the point that he now fears receiving treatment at the Jail. Woods also claims he has not received pain medication, an MRI, or other tests to manage his health issues. Woods, however, does not name any medical provider as a Defendant in this lawsuit or allege that any named Defendant, including Defendant Shirley, provided him inadequate medical treatment.[1] He does not allege that anyone, medical provider or otherwise, was aware that he requested pain medication or an MRI and disregarded the request. Nor does Woods seek relief from his allegedly poor medical treatment in the form of damages or an injunction to be provided with different or better medical care. Woods in passing alleges that "staff members are attempting to cover up [his medical treatment]." (ECF No. 1 at PageID 3.) But because he does not name those staff members or provide any factual allegations to support his claim, the Court need not accept it as true. *See Iqbal*, 556 U.S. at 679. Woods's allegations at most amount to a claim of negligence, which is insufficient to meet the subjective component of a deliberate indifference claim. *See Farmer*,

---

[1] Even though Woods identifies Defendant Shirley as the Jail's "Medical Officer," he does not allege that she is a medical provider.

511 U.S. at 835; *Winkler*, 893 F.3d at 891. Therefore, Woods has failed to state a claim of deliberate indifference under the Fourteenth Amendment.

Woods does not specify the basis for his claim that the Jail deducted medical fees from his inmate trust account without notice. Woods alleges that he was not notified about the medical fees before or after his medical appointments and was unaware the fees exist. Defendant Crockett informed Woods that only federal inmates must pay the fees to Obion County. Woods does not specify the amount of the fees or how many medical visits he had before noticing the fees taken from his account. In the grievance responses filed with the Court, Woods alleged that $20 was missing from his account. (ECF No. 9 at PageID 35.)

Woods's allegations are best construed as a claim that he was denied procedural due process. Before depriving an inmate of a constitutionally protected property interest, the state must provide notice and an opportunity to be heard. *See Paterek v. Village of Armada*, 801 F.3d 630, 649 (6th Cir. 2015). To prevail on a claim that he was denied procedural due process, Woods must show "(1) the existence of a protected property interest at issue, (2) a deprivation of that protected property interest, and (3) that he . . . was not afforded adequate procedures." *Id.*

Woods satisfies the first element of a procedural due process claim. "Prisoners have a protected, albeit limited, interest in their inmate trust account and cannot be deprived of this interest without due process." *Hensley v. Blount Cnty. Jail*, No. 3:15-CV-00019, 2018 WL 1324138, at *5 (E.D. Tenn. Mar. 14, 2018); *see Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997) ("Prisoners do have a protected interest in their money[.]"). Inmates therefore may not be deprived of funds in their trust accounts without due process of law.

Woods's claim, however, does not satisfy the second element. The medical fees taken from Woods's account were in exchange for medical services he received at the Jail. There is no

7

due process violation when funds from an inmate's account are used to cover the costs of services the facility provides to that inmate. *Bailey v. Carter*, 15 F. App'x 245, 251 (6th Cir. 2001) (citing *Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981)); *see Whitaker v. Thornton*, 2014 WL 585323 at *4 (W.D. Ky. Feb. 14, 2014) ("[T]he Sixth Circuit has held that withholding funds from an inmate account for a housing fee does not state a due process claim."); *Kaplan v. Mich. Dep't of Corr.*, 2013 WL 1289524 at *13 (W.D. Mich. Mar. 8, 2013) ("Plaintiff was not unconstitutionally deprived of his property by being charged for medical services which he actually received."); *Browder v. Ankrom*, No. CIV.A. 4:05CV-P9-M, 2005 WL 1026045, at *5 (W.D. Ky. Apr. 25, 2005) (concluding that "debiting an inmate's account for costs associated with his incarceration does not deprive him of a protected property interest" when the inmate "has been provided with a service or good in exchange for the money debited").

Woods does not allege that his account was debited for services he never received. In fact, he states that it was only "[a]fter seeing the medical staff" that he noticed a deduction from his account "for medical fees." (ECF No. 1 at PageID 3.) Nor does Woods allege that the medical fees were excessive for the services rendered. Even if Woods was unaware that the fees existed and would be debited from his account, he was not "deprived" of his property interest in his trust fund account since he received the services for which the fees were paid. He therefore fails to state a claim that his procedural due process rights were violated.

Woods briefly alleges that Captain Davis approached Woods and told him "that I just need to drop this," seemingly referring to Woods's grievances about the medical fees. (ECF No. 1 at PageID 4.) Woods does not allege that he faced retaliation or any consequence from filing this lawsuit or his grievances, and the grievance responses he requested have been filed with the Court. (ECF No. 9.) If Woods was attempting to assert a First Amendment claim regarding his

8

grievances, he does not state a claim. In addition, to the extent Woods claims the grievance system at the Jail is inadequate, he does not state a constitutional claim. "There is no inherent constitutional right to an effective prison grievance procedure." *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). A § 1983 claim therefore cannot be premised on contentions that the grievance procedure was inadequate. *Id.*

For the foregoing reasons, Woods's complaint is subject to dismissal in its entirety for failure to state a claim.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that leave to amend is not warranted.

In conclusion, the Court DISMISSES Woods's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is DENIED.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Woods in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The same considerations that lead the Court

to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. Therefore, it is CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Woods would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Woods nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, §§ 1915(a)-(b). Therefore, Woods is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in the PLRA and *McGore* by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Woods, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE